O

1
2
3
4
5
6
7
8

## UNITED STATES DISTRICT COURT

9

## CENTRAL DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16
17
18

| | |
|---|---|
| PATRICIA BROWN, | ) Case No. CV 12-1902-SP |
|      Plaintiff, | ) |
|       v. | ) **MEMORANDUM OPINION AND** |
| MICHAEL J. ASTRUE, | ) **ORDER** |
| Commissioner of Social Security | ) |
| Administration, | ) |
|      Defendant. | ) |
| | ) |

19

## I.

20

## INTRODUCTION

21     On March 15, 2012, plaintiff Patricia Brown filed a complaint against

22 defendant Michael J. Astrue, seeking a review of a denial of Disability Insurance

23 Benefits ("DIB").  Both plaintiff and defendant have consented to proceed for all

24 purposes before the Magistrate Judge pursuant to 28 U.S.C. § 636(c).  The parties'

25 briefing is now complete, and the court deems the matter suitable for adjudication

26 without oral argument.

27     Plaintiff presents three disputed issues for decision: (1) whether the

28 Administrative Law Judge ("ALJ") properly rejected the opinions of Drs. Reyadh

Michail,[1] Vikram Singh, Andrew Mooney, and Thomas Curtis, plaintiff's medical treatment providers; (2) whether the ALJ properly discounted plaintiff's credibility and subjective complaints; and (3) whether the ALJ provided a complete and proper assessment of plaintiff's residual functional capacity ("RFC"). Memorandum in Support of Plaintiff's Complaint ("Pl.'s Mem.") at 4-12; Defendant's Memorandum in Support of Answer ("Def.'s Mem.") at 2-10.

Having carefully studied, inter alia, the briefs submitted by the parties and the Administrative Record ("AR"), the court finds that, as detailed herein, there is substantial evidence in the record, taken as whole, to support the ALJ's decision. First, the ALJ properly rejected the opinions of Drs. Michail, Singh, Mooney, and Curtis as inconsistent with the objective evidence in the record. Second, the ALJ properly discounted plaintiff's credibility and subjective complaints. Third, the ALJ provided a complete and proper assessment of plaintiff's RFC. The court therefore affirms the Commissioner's decision denying benefits.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was forty-six years old on the date of her April 1, 2010 administrative hearing, has a high school education. AR at 47, 183. Her primary past relevant work was employment as a home attendant for the ill. *Id.* at 33, 180. As part of this work, she lifted patients, turned them over, cooked for them in their homes, assisted them in cleaning and grooming, answered phones, did house cleaning, and performed charting. *Id.* at 50, 51, 180.

Plaintiff applied for DIB on August 29, 2007. *Id.* at 23, 174. In the application, plaintiff alleged she had been disabled since May 1, 2007, due to lumbar spine displacement causing chronic back pain and left leg and foot pain;

---

[1]     Although the ALJ spells Dr. Michail's name as "Mitchail," the correct spelling, according to the record, appears to be "Michail." *See* AR at 252-53.

thyroid problems including goiter; rheumatoid arthritis; high blood pressure; and depression. *Id.* at 25, 32, 178, 186-87, 195, 205. Plaintiff's applications were denied initially and upon reconsideration, after which she filed a request for a hearing. *Id.* at 23, 87-99.

On April 1, 2010, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ. *Id.* at 45-67. The ALJ also heard testimony from Lynne Tracy, a vocational expert ("VE"). *Id.* at 67-77. On May 26, 2010, the ALJ denied plaintiff's request for benefits. *Id.* at 23-35.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff was not engaged in substantial gainful activity since May 1, 2007, her alleged disability onset date. *Id.* at 25.

At step two, the ALJ found that plaintiff suffered from the following severe impairments: lumbar spine disc displacement, depression, and anxiety. *Id.* at 25-28.

At step three, the ALJ determined that the evidence does not demonstrate that plaintiff's impairments, either individually or in combination, meet or medically equal any listing set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 28-29.

The ALJ then assessed plaintiff's RFC[2] and determined that she could perform "sedentary" work as defined in 20 C.F.R. 404.1567(a), with the limitations of "performing simple tasks involving only simple work related decisions and occasional interaction with supervisors, co-workers and the general public." *Id.* at 29.

---

[2] Residual functional capacity is what a claimant can still do despite existing exertional and non-exertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

1    The ALJ found, at step four, that plaintiff was "unable to perform any past
2    relevant work" as a home attendant or a hairdresser.  *Id.* at 33.

3    At step five, based upon plaintiff's vocational factors and RFC, the ALJ
4    found that, "considering [plaintiff's] age, education, work experience, and residual
5    functional capacity, there are jobs that exist in significant numbers in the national
6    economy that [plaintiff] can perform."  *Id.* at 34.  The ALJ therefore concluded that
7    plaintiff was not suffering from a disability, as defined by the Social Security Act,
8    from May 1, 2007 through May 26, 2010, the date of the decision.  *Id*. at 35.

9    Plaintiff filed a timely request for review of the ALJ's decision, which was
10   denied by the Appeals Council on January 9, 2012.  *Id.* at 1-6.  The ALJ's decision
11   stands as the final decision of the Commissioner.

12                                    **III.**

13                          **STANDARD OF REVIEW**

14   This court is empowered to review decisions by the Commissioner to deny
15   benefits.  42 U.S.C. § 405(g) (2010).  The findings and decision of the Social
16   Security Administration must be upheld if they are free of legal error and supported
17   by substantial evidence.  *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001).
18   But if the court determines that the ALJ's findings are based on legal error or are
19   not supported by substantial evidence in the record, the court may reject the findings
20   and set aside the decision to deny benefits.  *Aukland v. Massanari*, 257 F.3d 1033,
21   1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

22   "Substantial evidence is more than a mere scintilla, but less than a
23   preponderance."  *Aukland*, 257 F.3d at 1035.  Substantial evidence is such "relevant
24   evidence which a reasonable person might accept as adequate to support a
25   conclusion."  *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276
26   F.3d at 459.  To determine whether substantial evidence supports the ALJ's finding,
27   the reviewing court must review the administrative record as a whole, "weighing
28   both the evidence that supports and the evidence that detracts from the ALJ's

                                      4

1  conclusion." *Mayes*, 276 F.3d at 459.  The ALJ's decision "'cannot be affirmed

2  simply by isolating a specific quantum of supporting evidence.'"  *Aukland*, 257 F.3d

3  at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)).  If the

4  evidence can reasonably support either affirming or reversing the ALJ's decision,

5  the reviewing court "'may not substitute its judgment for that of the ALJ.'"  *Id.*

6  (quoting *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

**IV.**

**DISCUSSION**

**A.**   **The ALJ Properly Discounted the Opinions of Plaintiff's Treating**
       **Medical Providers**

11       Plaintiff contends that the ALJ improperly rejected the opinions of Reyadh

12  Michail, M.D., Vikram Singh, M.D., Andrew Mooney, D.C., and Thomas Curtis,

13  M.D.  Pl.'s Mem. at 4.  Plaintiff asserts the ALJ "did not consider all of the evidence

14  of record" when discounting the opinions of these treatment providers.  *Id.*

15  Specifically, plaintiff asserts the ALJ did not address the medical evidence available

16  in the AR, namely, the April 5, 2008 and March 5, 2009 records from Jali Rashti,

17  M.D. (AR at 233-43, 506-15), the records from Allied Chiropractic, especially the

18  progress notes made by Eric Shaver, D.C. (*id.* at 247-51, 516-19), the records from

19  Mary Jo Ford, M.D. (*id.* at 377-90, 506-15), and the doctor's certificate issued by

20  Dr. Singh in connection with plaintiff's state DIB claims (*id.* at 520).  *See* Pl.'s

21  Mem. at 4-6.  Furthermore, plaintiff contests the ALJ's determination that

22  Dr. Mooney is not an acceptable medical source and the ALJ's interpretation of the

23  treatment notes drafted by Dr. Mooney and Dr. Curtis.  *See id.* at 6-8.  Plaintiff

24  argues because the reasons the ALJ provided in the decision are "based on error of

25  fact and law," regarding the medical professionals' opinions, they are "not

26  legitimate," even if they are sufficiently specific.  *Id.* at 8-9.

27       Defendant asserts in response that the ALJ properly discounted the opinions

28  of Drs. Michail, Mooney, and Singh, because objective medical evidence and

5

treatment provided or recommended by the providers themselves do not support their opinions.  Def.'s Mem. at 2-8.  Defendant also asserts that the ALJ was justified in according little weight to Dr. Curtis's opinion and in discussing only generally, or not discussing at all, the records from the evaluations and treatment given by other providers.  *Id.* at 4-7.  Specifically, defendant argues that "[o]bjective medical tests failed to show any significant abnormalities" of plaintiff's spinal cord and that plaintiff only suffered from "moderate tenderness and spasm in the cervical and lumbar spine areas" and "a slightly decreased range of motion," with "no neurological deficits."  *Id.* at 2.  With regard to plaintiff's psychological condition, defendant argues no evidence of "loss of contact with reality," "paranoia or delusions," or "impairment of orientation, insight, or judgment" can be found in the record.  *Id.* at 5.  Defendant acknowledges plaintiff suffered from "abnormalities in . . . emotional functioning," but defendant notes the record contains no evidence of "limitations in activities of daily living . . . attributable to a mental impairment."  *Id.* Further, defendant argues a conservative course of treatment with medication and no surgery or hospitalization recommended by the medical professionals for plaintiff's spinal cord and mental conditions supports the ALJ's decision to discount the treatment providers' opinions.  *Id.* at 2-7.  Defendant also asserts the ALJ properly did not discuss the opinions of other medical professionals because the ALJ, having found those opinions to lack probative value as to plaintiff's RFC, was not required to address them.  *Id.* at 4.  The court agrees with defendant and finds that the ALJ offered clear and convincing reasons for rejecting the opinions of the treatment providers.

In evaluating medical opinions, Ninth Circuit case law and Social Security regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians).  *Lester v. Chater*, 81 F.3d 821, 830 (9th

1   Cir. 1996); *see also* 20 C.F.R. § 404.1527(c) (2012) (prescribing the respective

2   weight to be given the opinions of treating sources and examining sources). "As a

3   general rule, more weight should be given to the opinion of a treating source than to

4   the opinion of doctors who do not treat the claimant." *Lester*, 81 F.3d at 830

5   (citation omitted); *accord Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1036

6   (9th Cir. 2003). This is so because a treatment provider "is employed to cure and

7   has a greater opportunity to know and observe the patient as an individual."

8   *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987) (citation omitted). "The

9   opinion of an examining physician is, in turn, entitled to greater weight than the

10  opinion of a nonexamining physician." *Lester*, 81 F.3d at 830 (citations omitted).

11          Where the treating physician's "opinion is not contradicted by another doctor,

12  it may be rejected only for 'clear and convincing' reasons." *Benton*, 331 F.3d at

13  1036; *see also Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) ("While the

14  ALJ may disregard the opinion of a treating physician, whether or not controverted,

15  the ALJ may reject an *uncontroverted* opinion of a treating physician only for clear

16  and convincing reasons." (citation omitted)). "Even if the treating doctor's opinion

17  is contradicted by another doctor, the [ALJ] may not reject this opinion without

18  providing specific and legitimate reasons supported by substantial evidence in the

19  record for doing so." *Lester*, 81 F.3d at 830 (internal quotation marks and citation

20  omitted); *accord Reddick*, 157 F.3d at 725. The ALJ can meet the requisite specific

21  and legitimate standard "by setting out a detailed and thorough summary of the facts

22  and conflicting clinical evidence, stating his interpretation thereof, and making

23  findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal

24  quotation marks and citation omitted).

25  **1.      Medical Opinions**

26          **a.      Treatment Providers**

27  *Jalil Rashti, M.D.*

28          Dr. Rashti, a physician at the Center for Orthopedics and Rehabilitation in

7

Palmdale, treated plaintiff between January 2008 and March 2009.  AR at 236-43, 262-95, 302-57, 506-514.  After plaintiff's first visit with him, Dr. Rashti diagnosed her as suffering from radiculitis, lumbar disc displacement, and lumbarsacral neuritis/radiculitis.  *Id.* at 320.  Throughout the eight documented treatment visits plaintiff made with him, Dr. Rashti never changed his initial diagnosis.  *Id.* at 262, 270, 273, 311, 315, 320, 323, 507, 510, 513.  Although he found plaintiff to continually experience sharp neck and back pain accompanied by tenderness and limited range of motion in cervical and lumbar spine areas, hyperreflexion in the upper and lower extremities, and sciatic tension on the left side, Dr. Rashti found plaintiff to have "normal gait" (*id.* at 315, 507) and symmetrical reflexes (*id.* at 507), and to require relatively conservative treatment measures such as physiotherapy, topical ointment, and pain management medication (*id.* at 262, 270, 273, 311, 315, 320, 323, 507, 510, 513).

Through the course of his treatment, Dr. Rashti made three "disability index" reports, based on examinations of plaintiff's functional capacity made on April 4, 2008, August 6, 2008, and September 19, 2008.  *Id.* at 239-40, 302-03, 335-36.  In these reports, Dr. Rashti gave the disability percentages of 46%, 66%, and 46%, which represented moderate, severe, and moderate disability, respectively.[3]  In his latest report based on a September 19, 2008 examination, Dr. Rashti indicated that: plaintiff's "activities of daily living are greatly affected" by her pain; she was experiencing "moderate difficulty" with "pain intensity," "personal care," "lifting," "sitting," "standing," "social life," and "traveling"; pain prevented plaintiff from "walking more than 1 mile," "sitting more than 1 hour," and "standing for more than 1 hour"; but walking and sleeping were "not grossly affected."  *Id.* at 303.

---

[3]     Dr. Rashti used the Oswestry Index Questionnaire to reach the disability indexes.  The disability percentages are interpreted as follows: 0-20%, minimal disability; 21-40%, slight disability; 41-60%, moderate disability; 61-80%, severe disability; 81-100%, crippled.  *See* AR at 240.

*Reyadh Michail, M.D.*

Dr. Michail, a physician at Mission Community Hospital in Panorama City, treated plaintiff between 2007 and 2008. *Id.* at 252-53. In a "For Return to School or Work" document dated July 20, 2008, Dr. Michail opined that plaintiff would be "disabled" for one year but did not provide the basis of his assessment. *Id.* at 252. Subsequently, in his July 8, 2008 "Physician's Certification of Spousal Disability," Dr. Michail opined that plaintiff was physically unable to do the following: "perform domestic service such as sweeping, vacuuming, washing floors, cleaning the bathroom, dusting and picking up, taking out garbage, and cleaning the stove and refrigerator"; "meal preparation"; "meal clean-up"; "shopping for food"; "heavy cleaning"; "laundry"; "removal of tall weeds"; "other shopping/errands"; and "teaching and demonstration." *Id.* at 253. Dr. Michail then indicated plaintiff's expected duration of disability" would be "permanent stationary." *Id.*

*Vikram Singh, M.D., Q.M.E.*

Dr. Singh, an anesthesiologist who is also a pain management specialist and a California-certified qualified medical examiner at California Back and Pain Specialists, treated plaintiff between April 2009 and April 2010.

On April 22, 2009, Dr. Singh wrote a "Pain Management Complex Consultation" report after his initial examination of plaintiff that day. *Id.* at 366-76. In that report, Dr. Singh provided his diagnostic impression that plaintiff suffered from a whiplash syndrome to the cervical, thoracic, and lumbar spinal regions. *Id.* at 373. After reviewing plaintiff's MRI taken on March 12, 2008, however, Dr. Singh observed: only "minimal posterior bony spurring at C6-C7" and "no significant central spinal canal stenosis or neural foraminal stenosis at any level in the cervical spine"; proper alignment of the thoracic spine; no herniation, protrusion, or stenosis "at any level in the thoracic spine"; "minimal degenerative disc disease in the lumbar spine with a small disc bulge at L4-L5 and minimal degenerative facet hypertrophy at L4-L5"; and "no significant central spinal canal

9

1   stenosis or neural foraminal stenosis at any level in the lumbar spine." *Id.* at

2   372-73.  Given these findings, Dr. Singh recommended continuation of

3   "conservative treatment modalities," including physical therapy, chiropractics, and

4   medication, and did not require a return visit. *Id.* at 374-75.

5          On November 2, 2009, Dr. Singh treated plaintiff, who complained of

6   "moderate to severe" pain "radiating down the left lower extremity." *Id.* at 478.

7   Dr. Singh noted "tenderness to palpation in the lower lumbar spine." *Id.*  He

8   recorded plaintiff's accompanying subjective complaints. *Id.* at 478-79.  After

9   treatment and examination, Dr. Singh made the assessment that plaintiff was

10  suffering from "left lumbar radiculopathy," but he made no objective determination

11  as to its severity or the extent of disability caused by the impairment, deferring such

12  determination to plaintiff's primary physician. *Id.* at 478.  Dr. Singh recommended

13  that a new MRI of the lumbar spine be ordered for reevaluation. *Id.* at 479.  As

14  treatment, he only recommended physiotherapy and chiropractics. *Id.*

15         Dr. Singh treated plaintiff again on December 2, 2009, and made the same

16  assessment he made on November 2, while adding that plaintiff suffered also from

17  cervical radiculopathy. *Id.* at 474.  But as before, he made no evaluation on severity

18  or degree of disability.  Dr. Singh also recommended the same treatment as before,

19  though he added the recommendation that plaintiff's primary physician authorize a

20  series of three transforaminal epidural injections to be administered at L4-L5 and

21  L5-S1 levels bilaterally. *Id.* at 475.

22         On January 6, 2010, Dr. Singh wrote a report that is nearly identical to the

23  December 2, 2009 report, making the same findings, diagnoses, and

24  recommendations, except that Dr. Singh also prescribed Soma for muscle spasms,

25  Vicodin for pain, and Prevacid for upset stomach resulting from pain medication.

26  *Id.* at 471.  Again, no determination of severity or degree of disability was made.

27         On March 31, 2010, Dr. Singh filled out a "Claim for Disability Insurance

28  Benefits – Doctor's Certificate" on behalf of plaintiff for submission to California's

Employment Development Department. *Id.* at 520.  On that form, Dr. Singh indicated that plaintiff had been "incapable of performing [her] regular or customary work," and that he anticipated releasing plaintiff back to her work on September 30, 2010. *Id.*

On April 12, 2010, eleven days after plaintiff's hearing before the ALJ, Dr. Singh completed a "Lumbar Spine Residual Functional Capacity Questionnaire" requested by plaintiff's counsel.  On this form, Dr. Singh indicated only lumbar stain/sprain syndrome and lumbar radiculopathy as his diagnosis and referred only to plaintiff's March 2008 MRI, which he found to show "minimal degenerative disc disease [at] L4/5 and mild degenerative facet hypertrophy [at] L4-5." *Id.* at 521. Based on these findings and plaintiff's subjective complaints of pain, Dr. Singh stated that plaintiff can: walk for one hour without rest or severe pain; sit for five minutes at one time; stand for 30-60 minutes at one time; and sit and stand/walk for two hours total in an eight-hour work day. *Id.* at 522-23.  But he also determined that plaintiff can never lift/carry anything, even items less than 10 pounds, and never twist, stoop (bend), crouch, or climb ladders or stairs. *Id.* at 523.  In addition, Dr. Singh indicated that at a workplace plaintiff would require: "periods of walking around during an 8 hour working day"; "a job which permits shifting positions *at will* from sitting, standing or walking"; unscheduled 10-15 minute breaks every two hours during an eight-hour working day; elevation of her left leg for a "couple of inches" during 50 percent of an eight-hour working day; and standing or walking with a cane. *Id.*  At the same time, Dr. Singh wrote that he did not recommend surgery, without indicating what the prognosis would be with surgery. *Id.* at 524. Finally, he noted that plaintiff's prognosis without surgery would be lumbar radiculopathy, disc degeneration, and lumbar disc protrusion and that his treatment recommendation was for medications, physical therapy, and epidural and trigger point injections. *Id.*

11

*Mary Jo Ford, M.D., Q.M.E.*

Dr. Ford, a physician at Phoenix Pain Medicine in Hermosa Beach, treated plaintiff in 2009. Although it appears that Dr. Ford treated plaintiff on more than one occasion, only one treatment report, from October 5, 2009, is included in the record. *Id.* at 379-81. In that report, Dr. Ford noted plaintiff's subjective complaints of "severe pain in her neck, midback, and low back regions," with "low back pain . . . extend[ing] into the left lower extremity with numbness, sensitivity, throbbing, and aching." *Id.* at 379. Dr. Ford also noted plaintiff's self-reported pain level as "ranging between 7/10 and 8/10 on a visual analog scale." *Id.*

After performing a physical examination, Dr. Ford observed that plaintiff had "palpable painful tenderness in her paracervical and trapezius musculature bilaterally," accompanied by "palpable spasm notably in the trapezius muscle bilaterally" and painful cervical range of motion in all planes tested. *Id.* Dr. Ford prescribed lower dosage of pain management medication than previously prescribed for plaintiff, as per plaintiff's desire to "simplify her medication." *Id.* at 379-80. Dr. Ford did not make any objective finding regarding plaintiff's lumbar spine condition. Nor did she make a determination as to the degree of plaintiff's disability or her RFC.

*Andrew Mooney, D.C.*

Dr. Mooney, a chiropractor at the Center for Orthopedics and Rehabilitation in Palmdale, treated plaintiff from April 2009 to October 2010. *Id.* at 388, 391-95, 493-98, 531-48. Dr. Mooney initially diagnosed plaintiff as suffering from cervical and lumbar spine disc displacement with radiculitis and thoracic spine disc displacement. *Id.* at 388. But over the eighteen months of treatment, he modified the diagnosis to cervical spine disc displacement and lumbar spine disc displacement and radiculitis. *Id.* at 531. Dr. Mooney noted plaintiff's complaint of persistent back pain and sleep problems due to pain and made the objective findings, at different times, of limited range of motion in cervical and lumbar spine

12

regions, "moderate tenderness" of the two regions, positive sciatic tension, and diminished sensitivity in the left leg, while observing also in the more recent reports that plaintiff's arm and leg muscle strength had returned to normal, lumbar range of motion was normal (though with pain), and sensation was "grossly intact." *Id.* at 388, 391-95, 493-98, 531-48.

While treating plaintiff, Dr. Mooney completed a "Lumbar Spine Residual Functional Capacity Questionnaire" on March 24, 2010 and three disability index reports between June 2010 and October 2010. *Id.* at 493-96, 535-36, 539-40, 543-44. In the RFC questionnaire, Dr. Mooney stated that plaintiff can: walk for five city blocks without rest or severe pain; sit for 1 hour at one time; stand for 1 hour at one time; and sit and stand/walk for two hours total in an eight-hour work day. *Id.* at 494. He also determined that plaintiff can: lift/carry items weighing less than 10 pounds frequently and those weighing 10 pounds occasionally; twist occasionally; stoop (bend), crouch, and climb stairs rarely; but never climb ladders. *Id.* at 495. At the same time, Dr. Mooney wrote that plaintiff was "not a surgical candidate" and recommended only medication, physical therapy, chiropractics, and epidural injections. *Id.* at 496. In the three disability index reports, Dr. Mooney determined that plaintiff had "moderate" disability, with the disability percentages at 54%, 48%, and 48%, on June 18, 2010, July 30, 2010, and October 11, 2010, respectively. *Id.* at 536, 540, 546. He rated plaintiff's difficulty with pain intensity, lifting, walking, sitting, standing, and traveling as "moderate." *Id.*

*Eric Shaver, D.C., and Park Mickelson, D.C.*

Drs. Shaver and Mickelson, chiropractors at Allied Chiropractic in Lancaster, treated plaintiff on May 20, 2008 and June 24, 2008. *Id.* at 248-51, 517-19. Dr. Shaver noted reduction in plaintiff's range of motion in cervical and lumbar spine regions by 50%, palpable tenderness in the left upper trapezius, tender points in the left upper back, positive left leg raising and shoulder depression tests, and subjective complaints of pain and distress with loss of sleep. *Id.* at 248, 250.

13

Dr. Mickelson noted subjective complaints of pain and appearance of distress and mental health concerns. *Id.* at 249, 251.

*Thomas Curtis, M.D.*

Dr. Curtis, a psychiatrist practicing privately in Los Angeles, treated plaintiff from February 2009 to February 2010 on a weekly basis. *Id.* at 408-46, 453-62, 526-30. After conducting a battery of examinations on February 20, 2009, Dr. Curtis found plaintiff to be suffering from depression, anxiety, and "serious impairment in social and occupational functioning to the point that [plaintiff] would be unable to hold a job" at that time. *Id.* at 428-29. Dr. Curtis noted plaintiff scored 37 ("severe") on the Beck Anxiety Inventory, 33 ("severe") on the Beck Depression Inventory, 75th percentile on the Total Scale of the Neuroticism Scale Questionnaire ("NSQ"), 98th percentile on the Anxiety Scale of the NSQ, 3 Sten (showing "defensive, unrealistic, hypomanic quality of denial") on the Depression Scale of the NSQ. *Id.* at 426-27. Further, Dr. Curtis noted that the Minnesota Multiphasic Personality Inventory–2 ("MMPI-2") "revealed indications of overwhelmed emotional coping mechanisms and mental dysfunction," though he found the results to indicate a "technically invalid" profile due to unacceptable scores on the L (lie; "faking good"), F (infrequency; "faking bad"), K (defensiveness; denial/evasiveness), and F-K (honesty of test responses) scales. *Id.* at 427. He inferred that in plaintiff's case, "the most likely cause for invalidity would be a combination of factors of actual intense emotional symptomatology, overwhelmed coping mechanisms, impaired motivation and the inhibitory effects of depression, frustration, irritability, anger and fatigue." *Id.* In sum, Dr. Curtis gave plaintiff a global assessment of functioning ("GAF") score of 50 (signaling serious symptoms or serious impairment in social, occupational, or school functioning), according to the Diagnostic and Statistical Manual of Mental Disorders, 4th edition ("DSM-IV"), with a whole person impairment ("WPI") rating of 30 and a standard psychological impairment of 42%. *Id.* at 430. This determination led Dr. Curtis to

14

conclude that plaintiff was moderately impaired for activities of daily living and for concentration, persistence, and pace in work and other settings, and markedly or significantly impaired for social functioning and adaptation in complex work-like settings. *Id.* at 430-33.

On April 28, 2010, Dr. Curtis completed a "Mental Impairment Questionnaire (RFC & Listings)" on plaintiff. *Id.* at 526-30. On this form, he rated almost all of plaintiff's mental abilities and aptitude needed for unskilled, semiskilled, and skilled work as "poor or none," meaning having "no useful ability to function." *Id.* at 528-29. He rated the rest of plaintiff's mental abilities and aptitude as "fair" ("seriously limited" in ability to function). *Id.* Thus, Dr. Curtis concluded that the degree of plaintiff's functional limitations was "marked" ("more than moderate, but less than extreme") for activities of daily living and social functioning, "constant" for concentration, persistence, and pace in work and other settings, and "repeated" for episodes of deterioration or decompensation in work or work-like settings. *Id.* at 530.

**b.    Medical Examinations**

*MRIs*

MRIs were performed on plaintiff on two occasions – March 12, 2008 and May 7, 2008. *Id.* at 305-310. On March 12, 2008, plaintiff received an MRI examination of the lumbar and cervical spine regions. *Id.* at 307-10. The exam revealed a "minimal disc bulge" and "minimal degenerative facet hypertrophy" on plaintiff's L4-L5 and a "minimal posterior bony spurring" on C6-C7. *Id.* at 307, 309. The May 7, 2008 MRI of plaintiff's thoracic region did not reveal any abnormalities. *Id.* at 305-06.

*Julian Stanley, M.D.*

On October 25, 2009, Dr. Stanley, a physician at Sherman Oaks Hospital in Los Angeles, examined plaintiff, who went to the hospital emergency room complaining of severe lower back and buttock pain. *Id.* at 483-88. After

1   conducting a CT scan of plaintiff's lumbar spine, Dr. Stanley observed that plaintiff

2   had "mild broad-based disk bulging throughout L3 through S1 inferiorly, but no

3   spinal stenosis and no foraminal stenosis [as well as] no significant disk disease,

4   [and] no fractures or subluxations." *Id.* at 483.

5   *Oren Hirsch, M.D.*

6         On December 1, 2009, Dr. Hirsch, a physician at Providence Tarzana Medical

7   Center in Tarzana, examined plaintiff, who was complaining of neck and back pain.

8   *Id.* at 500.  Dr. Hirsch found "no tenderness or inflammation along the cervical,

9   thoracic or lumbar spines" or any of the extremities.  *Id.* at 501.

10  **2.      The ALJ's Findings**

11        **a.      Opinions of Drs. Michail, Singh, and Mooney**

12        Here, the ALJ concluded that plaintiff could perform sedentary work with

13  certain restrictions.  *Id.* at 29.  In reaching that determination, the ALJ gave "little

14  weight" to the opinions of Drs. Michail, Singh, and Mooney "because their opinions

15  are unsupported by the medical evidence and treating progress notes in the record"

16  and are instead "inconsistent with the medical history of [plaintiff] and the objective

17  findings."  *Id.* at 32.  In addition, the ALJ found that Dr. Mooney, as a chiropractor,

18  was not an "acceptable medical source," whose opinion does not carry controlling

19  weight.  *Id.*

20        The ALJ pointed to the objective medical tests and findings contained in the

21  record and found no evidence of "any significant abnormalities" to plaintiff's spine.

22  *Id.* at 30-31.  The ALJ noted that the MRI tests showed only "minimal" degeneration

23  of the cervical and lumbar spine.  *Id.* at 30-31, 305-10.  The ALJ also noted that

24  Dr. Singh's report shows plaintiff's gait to be "normal" and her motor strength and

25  sensation to be "intact" with "no neurological deficits."  *Id.* at 30, 369-73.  Thus, the

26  ALJ concluded that plaintiff had "[a]t most . . . moderate tenderness and spasm in

27  the cervical and lumbar spine areas and a slightly decreased range of motion."  *Id.*

28        The court finds the ALJ properly considered the opinions of Drs. Michail,

1   Singh, and Mooney in light of the full record and discounted their disability

2   determinations by presenting clear and convincing reasons, while accepting their

3   findings and observations supported by objective evidence.  *See Benton*, 331 F.3d at

4   1036; *see also Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995); *Connett v.*

5   *Barnhart*, 340 F.3d 871 (9th Cir. 2003) (the ALJ properly rejected treating

6   physician's conclusions regarding plaintiff's limitations based on the determination

7   that the physician's own treatment notes did not support the conclusions); *Burkhart*

8   *v. Bowen*, 856 F.2d 1335, 1339-40 (9th Cir. 1988) (the ALJ properly rejected

9   treating physician's opinion, which was unsupported by medical findings, personal

10  observations, or test reports).  In particular, the ALJ properly discounted their

11  opinions to the extent he found them inconsistent with the objective medical

12  evidence and their own findings.

13       Although the court finds the ALJ gave clear and convincing reasons for

14  discounting the opinions of Drs. Michail, Singh, and Mooney, the court also finds

15  that one of the ALJ's stated reasons was not clear and convincing.  Specifically, the

16  ALJ improperly concluded that "[o]nly conservative treatment with medication has

17  been recommended" by plaintiff's treatment providers.  AR at 30.  Among the

18  recommendations made by Drs. Singh and Mooney was epidural and trigger point

19  injections to manage plaintiff's pain.  *Id.* at 475, 496, 524.  While the ALJ properly

20  concluded that physical therapy and pain medication that plaintiff received were

21  conservative treatment measures, epidural and trigger point injections may not be

22  considered conservative.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir.

23  2008) (describing physical therapy and anti-inflammatory medication as

24  conservative treatment); *Christie v. Astrue*, No. 10-3448, 2011 WL 4368189, at *4

25  (C.D. Cal. Sept. 16, 2011) (refusing to characterize steroid and trigger point

26  injections as conservative).  Thus, it was improper for the ALJ to characterize the

27  treatment recommendations plaintiff received as "[o]nly conservative."  AR at 30.

28  Nonetheless, the ALJ's mischaracterization of plaintiff's treatment does not per se

1   discredit his ultimate findings because the remainder of his conclusions were

2   supported by ample evidence in the record.  *See Carmickle v. Comm'r*, 533 F.3d

3   1155, 1162 (9th Cir. 2008) ("So long as there remains substantial evidence

4   supporting the ALJ's conclusions on . . . credibility and the error does not negate

5   the validity of the ALJ's ultimate credibility conclusion, such is deemed harmless

6   and does not warrant reversal.") (internal quotation marks and citations omitted);

7   *Batson v. Comm'r*, 359 F.3d 1190, 1195-97 (9th Cir. 2004) (applying harmless error

8   standard where one of the ALJ's several reasons supporting an adverse credibility

9   finding was held invalid).  The court therefore finds the ALJ properly discounted

10  the disability determinations of Drs. Michail, Singh, and Mooney with clear and

11  convincing reasons.

12          Plaintiff argues the ALJ's reasons were "not legitimate" as to the opinions of

13  Drs. Michail, Singh, and Mooney because not all the evidence in the record was

14  discussed by the ALJ and consideration of the entire record would have shown the

15  record to be consistent with the three treatment providers' opinions.  Pl.'s Mem. at

16  4.  But defendant correctly asserts that the ALJ was not required to discuss evidence

17  in the record that is not probative as to RFC.  Def.'s Mem. at 4; *see Vincent ex rel.*

18  *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) ("The [Commissioner]

19  . . . need not discuss *all* evidence presented . . . .  Rather, [the Commissioner] must

20  explain why significant probative evidence has been rejected." (citation and internal

21  quotation marks omitted)).  And the evidence discussed only generally or not

22  discussed at all by the ALJ – such as the opinions of Drs. Rashti, Ford, Shaver, and

23  Mickelson – is either duplicative of the rejected opinions of Drs. Michail, Singh,

24  and Mooney or based primarily on plaintiff's subjective complaints, lacking

25  objective support for a finding of complete disability.  *See* Def.'s Mem. at 4; Pl.'s

26  Mem. at 4-6.  Thus, the court agrees with defendant that the evidence not discussed

27  fully was not probative as to plaintiff's RFC, and the ALJ's choice not to discuss it

28  fully did not make his decision illegitimate.  *See* Def.'s Mem. at 4.

18

1    Plaintiff also argues the ALJ's discounting of Dr. Mooney's opinion based

2  partly on Dr. Mooney's status as a chiropractor – not an acceptable medical source –

3  was not legitimate, as a chiropractor may still offer opinions regarding RFC and

4  several of Dr. Mooney's records were co-authored by another physician.  Pl.' s

5  Mem. at 6-7.  Defendant correctly notes the ALJ gave adequate consideration to

6  Dr. Mooney's opinion, despite his status as a non-acceptable medical source, and

7  discounted it after finding the conclusions made by Dr. Mooney to be inconsistent

8  with the MRI and other objective evidence in the record.  *See* Def.'s Mem. at 3-4;

9  *see also* 20 C.F.R. § 404.1513(d).  As defendant asserts, the ALJ gave Dr. Mooney's

10  opinion "more than sufficient consideration" and properly discounted it.  Def.'s

11  Mem. at 3.

12    Accordingly, the ALJ properly discounted the opinions of Drs. Michail,

13  Singh, and Mooney, by setting forth clear and convincing reasons that were

14  supported by substantial evidence.

15    **b.    Opinion of Dr. Curtis**

16    The ALJ gave "little weight" to the opinion of plaintiff's psychiatrist,

17  Dr. Curtis, because he found the psychiatrist's opinion to be "without substantial

18  support from the other evidence of record" and his assessment to be discordant with

19  the overall record, given the relative lack of Dr. Curtis's treatment records, apparent

20  infrequency of treatment visits, and questions about the validity of the

21  psychological test scores.  AR at 33.  The ALJ concluded that "a history of

22  depression, treating records, and a consultative psychological evaluation" do not

23  support a determination of total preclusion from basic work activities due to

24  depression.  *Id.* at 31.  The ALJ found no evidence of actual "limitations to

25  plaintiff's activities of daily living or episodes of decompensation attributable to a

26  mental impairment," despite Dr. Curtis's determination of frequent episodes of

27  decompensation.  *Id.*  The ALJ further noted plaintiff did not experience: impaired

28  orientation, insight or judgment; paranoia; delusions; hallucinations; suicidal

1  ideation or attempt; or hospitalization for any type of psychiatric concern.  *Id.* at 31,

2  424, 426.

3       Plaintiff challenges the ALJ's rejection of Dr. Curtis's opinion by arguing

4  that the narrative reports submitted by Dr. Curtis are proper substitutes for detailed

5  treatment notes, the ALJ had the duty to develop the record further if he found the

6  record to be incomplete, Dr. Curtis's finding of invalid test results was limited to the

7  MMPI-2, and Dr. Curtis's disability determination was based on other

8  examinations, not on the MMPI-2.  Pl.'s Mem. at 7-8.

9       Defendant argues it was proper for the ALJ to reject Dr. Curtis's opinion

10  because the psychiatrist's credibility was undermined by a lack of substantial

11  support from other parts of the record, a lack of detailed treatment notes made by

12  Dr. Curtis, infrequent actual treatment visits, and potential for malingering raised by

13  plaintiff's "random answering pattern" on the MMPI-2.  AR at 427; Def.'s Mem. at

14  6-7.  Defendant asserts the ALJ was not required to develop the record further

15  because the record submitted by Dr. Curtis was clear and sufficient to permit proper

16  evaluation of the evidence.  Def.'s Mem. at 7-8; *see also* 20 C.F.R. § 404.1512(e);

17  *Mayes*, 276 F.3d at 459-60 ("An ALJ's duty to develop the record further is

18  triggered only when there is ambiguous evidence or when the record is inadequate

19  to allow for proper evaluation of the evidence.").

20       The court agrees with defendant that the ALJ's identification of the two key

21  defects of Dr. Curtis's opinion – lack of independent objective support and potential

22  for malingering raised by plaintiff's random answering pattern on the MMPI-2 –

23  provides clear and convincing reasons for rejecting the opinion.  *See* AR at 33;

24  *Batson*, 359 F.3d at 1195 (the ALJ may discredit treating physician's opinions that

25  are conclusory, brief, and unsupported by the record as a whole or by objective

26  medical findings); *Burkhart v. Bowen*, 856 F.2d 1335, 1339-40 (9th Cir. 1988) (the

27  ALJ properly rejected treating physician's opinion, which was unsupported by

28  medical findings, personal observations, or test reports); *Tonapetyan*, 242 F.3d at

1149 (the ALJ may reject an opinion for lack of objective support when the opinion relies on plaintiff's subjective complaints and on testing within plaintiff's control); *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1989) ("A physician's opinion of disability 'premised to a large extent upon the claimant's own accounts of his symptoms and limitations' may be disregarded where those complaints have been 'properly discounted.'") (quoting *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989).

Dr. Curtis's February 2009 report and April 2009 mental impairment questionnaire relied on plaintiff's subjective accounts of her experience and upon a battery of tests within plaintiff's control. *See id.* at 410, 419, 421-43; 526-30; *see also Tonapetyan*, 242 F.3d at 1149; *Morgan*, 169 F.3d at 602. The MMPI-2, which resulted in an invalid profile, appears to have been the only psychological test given by Dr. Curtis that included some control for malingering. Although Dr. Curtis did not find malingering as the likely cause for the invalid profile, it was proper for the ALJ to find plaintiff's "random answering pattern" as a sign that she "was not putting forth maximal effort or was not fully cooperating," particularly given that plaintiff had failed on the F, K, L, and F-K scales on the MMPI-2, which are measured to detect malingering, and that Dr. Curtis had not offered an objective basis for ruling out malingering. *Id.* at 31, 427, 430. Moreover, having found "possible malingering or misrepresentation" as a cause for the invalid profile for the MMPI-2, and having found neither independent objective evidence supporting Dr. Curtis's opinion nor any documentation of a single episode of decompensation or occurrence of limitations to daily activities attributable to a mental impairment, it was not improper for the ALJ to question the validity of the other psychological tests conducted on plaintiff by Dr. Curtis on the same day, since it was based on those tests that the psychiatrist made his functional assessments. *Id.* at 31, 425-40.

Accordingly, the court finds the ALJ properly discredited Dr. Curtis's opinion regarding plaintiff's RFC by identifying clear and convincing reasons for the rejection.

**B.      The ALJ Provided Clear and Convincing Reasons for Discounting**
**Plaintiff's Credibility and Subjective Complaints**

Plaintiff argues that the ALJ failed to provide legitimate, even if specific, reasons for rejecting her subjective complaints regarding the back and leg pain and mental impairment she has suffered.  Pl.'s Mem. at 9-11.  Plaintiff principally asserts that the ALJ failed to properly consider the objective evidence and medical opinions that support plaintiff's complaints, such as plaintiff's need for epidural injections, diminished sensation in the lumbar and cervical spines, and the need for additional MRI tests.  *Id.*  Plaintiff also alleges the ALJ erred in discounting her credibility based on inconsistent reporting of her work activity, as the ALJ failed to ascertain the reason for the inconsistency during the hearing.  *Id.* at 11.  Further, plaintiff argues it was improper for the ALJ to discount her credibility based on her absence from a scheduled examination, as the ALJ failed again to ascertain the reason for her absence.  *Id.*

A plaintiff claiming DIB carries the burden of producing objective medical evidence of his or her impairments and showing that the impairments could reasonably be expected to produce some degree of the alleged symptoms.  *Benton*, 331 F.3d at 1040.  But once the claimant meets that burden, medical findings are not required to support the alleged severity of pain.  *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); *see also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) ("claimant need not present clinical or diagnostic evidence to support the severity of his pain" (citation omitted)).

Instead, once the claimant has met the burden of producing objective medical evidence, an ALJ can reject the claimant's subjective complaint "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." *Benton*, 331 F.3d at 1040.  The ALJ may consider the following factors in weighing the claimant's credibility: (1) his or her reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the

claimant's testimony and his or her conduct; (3) his or her daily activities; (4) his or her work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. *Thomas*, 278 F.3d at 958-59. Although a lack of medical evidence supporting a plaintiff's alleged symptoms cannot be the sole reason for rejecting his or her testimony, it can be one of several factors used in evaluating the credibility of his or her subjective complaints. *See Rollins*, 261 F.3d at 856-57.

Here, as discussed above, the court finds the ALJ identified evidence pointing to "possible malingering or misrepresentation." *See* AR at 31, 427. The ALJ could properly have discounted plaintiff's credibility on this basis alone.

In addition, the court finds that the ALJ provided several other clear and convincing reasons for discounting plaintiff's subjective complaints. *See Benton*, 331 F.3d at 1040. First, the ALJ properly found the objective medical evidence did not support plaintiff's subjective complaints regarding pain coming from her spinal regions. AR at 28, 30-31. Based on the medical evidence in the record, the ALJ credited plaintiff as having experienced the "severe" impairment of "lumbar spine disc displacement . . . ." *Id.* at 25. But in the MRI tests of plaintiff's spine and Dr. Singh's examination of plaintiff, as discussed above, the ALJ found objective medical evidence to discredit plaintiff's subjective complaints. *Id.* at 30-31. The ALJ found specific evidence of plaintiff having: only "minimal" degeneration in the cervical and lumbar regions; only "mild tenderness" and "a slightly decreased" but "normal range of motion" in the cervical and lumbar spine regions; intact motor strength and sensation; "no neurological deficits"; negative cervical compression tests; normal gait; and "no significant central spinal canal stenosis or neural foraminal stenosis at any level." *Id.* These are clear and convincing reasons based on objective medical evidence that the ALJ gave in properly discrediting plaintiff's subjective complaints. Although plaintiff asserts the ALJ erred impermissibly by neglecting to consider the evidence of some diminished sensation in her spinal

23

regions and her need for epidural injections and additional MRI tests, none of these are sufficient to negate the objective evidence identified by the ALJ.  *See* Pl.'s Mem. at 9-11.

Second, the ALJ properly found the objective medical evidence did not support plaintiff's subjective complaints regarding depression and anxiety.  AR at 28-29, 31, 33.  Based on the medical evidence in the record, the ALJ credited plaintiff as having had the "severe" impairments of "depression and anxiety."  *Id.* at 25.  But as discussed above, the ALJ did not find any evidence of "repeated episodes of decompensation or marked limitations in activities of daily living, social functioning or concentration, persistence or pace" due to depression and anxiety.  *Id.* at 29.  The ALJ did not find any "marked increases in [plaintiff's] level of depression" in her treating psychiatrist's notes, nor any objective evidence that shows that plaintiff's depression precludes her from performing basic work activities.  *Id.* at 30, 31.

Third, the ALJ properly discounted plaintiff's credibility based on inconsistencies in the record regarding plaintiff's work activities.  *See id.* at 31, 64-66, 164, 173.  At the administrative hearing, plaintiff first stated that in 2008, after the onset of disability in 2007, she worked for "Truman's Memorial"; then she said she did in-home services for "a lady."  *Id.* at 64-65.  After plaintiff's counsel interrupted the ALJ's questioning, the ALJ gave counsel an opportunity to "flesh . . . out" plaintiff's testimony.  *Id.* at 65.  Upon her counsel's questioning, plaintiff testified that she provided in-home care for her disabled brother for approximately $8,000 worth of income for the year.  *Id.* at 66-67.  Plaintiff, however, had initially indicated in her disability report that she provided in-home services for her children in 2008.  *Id.* at 179.  Contrary to plaintiff's argument, the ALJ was not required to ascertain the reason for every discrepancy in the record, especially since he gave plaintiff's counsel an opportunity to clarify plaintiff's testimony.  As defendant correctly notes, this inconsistency in plaintiff's testimony was a proper reason to

24

1    discount plaintiff's credibility.  Def.'s Mem. at 8; AR at 31; *see also Tonapetyan*,

2    242 F.3d at 1148 (an ALJ may engage in ordinary techniques of credibility

3    evaluation, such as considering inconsistencies in a claimant's testimony).

4         Fourth, the ALJ properly discounted plaintiff's credibility when he

5    considered plaintiff's failure to attend a consultative examination "without a valid

6    excuse" as an action that "reflects poorly on [plaintiff's] credibility."  AR at 32,

7    231.  Although plaintiff argues it is not clear whether she received proper

8    notification or whether the appointment at 10:00 p.m. on February 7, 2008, as

9    indicated in one report (*id.* at 231), was a reasonable time (Pl.'s Mem. at 11), the

10   record does show that two notices were sent to plaintiff's address in Lancaster,

11   which numerous other documents in the record also indicate as plaintiff's address

12   throughout 2008 (AR at 311, 315, 320, 339), and the appointment time indicated on

13   the actual notices was 10:00 a.m., during normal business hours (the 10:00 p.m.

14   time in one of the documents appears to have been a simple misprint) (*id.* at

15   211-13).  Thus, the ALJ properly considered plaintiff's unexcused absence as an

16   additional discrediting factor.

17        Accordingly, the court finds that the ALJ provided clear and convincing

18   reasons, supported by substantial evidence, for discounting plaintiff's credibity and

19   subjective complaints.

20   **C.    The ALJ Provided a Complete and Proper Assessment of Plaintiff's**

21   **Residual Functional Capacity**

22        Plaintiff argues the ALJ's RFC finding that plaintiff has the capacity to do

23   sedentary work "is not supported by substantial evidence of record and cannot be

24   permitted to stand" because "the ALJ failed to identify any medical opinion" on

25   which he based the RFC finding.  Pl.'s Mem. at 12.  Plaintiff also contends that the

26   ALJ failed to properly consider the opinions of Drs. Singh and Curtis, and the VE,

27   and that "the ALJ failed to note whether there would be any . . . non-exertional

28   limitations," besides non-exertional mental limitations, which the ALJ ruled out.  *Id.*

1    In determining a claimant's RFC, an ALJ must consider all relevant evidence

2  in the record, including medical records, lay evidence, and the effects of symptoms

3  (including pain) that are reasonably attributed to a medically determinable

4  impairment.  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006);

5  *see* Social Security Ruling ("SSR") 96-5p,[4] 1996 WL 374183, at *5 (July 2, 1996);

6  20 C.F.R. § 404.1545(a)(3) (2012) (a claimant's assessed RFC is based upon all the

7  relevant evidence in the case record).  Here, as discussed above, the ALJ determined

8  that plaintiff has the RFC to perform sedentary work while being limited to

9  "performing simple tasks involving only simple work related decisions and occasional

10  interaction with supervisors, co-workers and the general public."[5]  AR at 29.  The

11  court finds that the ALJ's RFC finding is supported by substantial evidence.

12    The ALJ determined plaintiff's RFC as sedentary work, after considering the

13  opinions of all the treating and examining medical professionals, and giving "little

14  weight" to the opinions of Drs. Michail, Singh, Mooney, and Curtis.  *Id.* at 29-33.

15  As discussed above, the court finds that the ALJ properly discounted the treating

16  medical professionals' opinions on plaintiff's physical and mental impairments –

17  and, by extension, the opinion of the VE who relied on the opinions of these

18  _____

19    [4]    "The Commissioner issues Social Security Rulings to clarify the Act's

20  implementing regulations and the agency's policies.  SSRs are binding on all
   components of the [Social Security Administration].  SSRs do not have the force of

21  law.  However, because they represent the Commissioner's interpretation of the

22  agency's regulations, we give them some deference.  We will not defer to SSRs if
   they are inconsistent with the statute or regulations."  *Holohan v. Massanari*, 246

23  F.3d 1195, 1203 n.1 (9th Cir. 2001) (internal citations omitted).

24    [5]    "Sedentary work involves lifting no more than 10 pounds at a time and

25  occasionally lifting or carrying articles like docket files, ledgers, and small tools.
   Although a sedentary job is defined as one which involves sitting, a certain amount

26  of walking and standing is often necessary in carrying out job duties. Jobs are

27  sedentary if walking and standing are required occasionally and other sedentary
   criteria are met."  20 C.F.R. §§ 404.1567 and 416.967.

28

1    medical professionals.  *Id.* at 29-33, 67-77.

2          At the same time, as defendant notes, the ALJ "accounted for those aspects of

3    the opinions [by the medical professionals] supported by the record" in reaching the

4    RFC finding of sedentary work.  Def.'s Mem. at 9-10; *see Turner v. Comm'r*, 613

5    F.3d 1217, 1223 (9th Cir. 2010) (finding it was proper for the ALJ to incorporate

6    treating physician's RFC determination, while rejecting implication of total

7    disability in the physician's evaluation).  The ALJ's determination does find some

8    support in portions of plaintiff's treating physicians' RFC determinations.

9    Dr. Rashti, in his most recent determination, reported that plaintiff was experiencing

10   "moderate difficulty," but not severe or extreme difficulty, with pain and activities

11   of daily living, finding her to be able to walk up to one mile.  AR at 302-03.

12   Dr. Singh determined that plaintiff could work in environments that permit:

13   "periods of walking around during an 8 hour working day"; "shifting positions *at*

14   *will* from sitting, standing or walking"; unscheduled 10-15 minute breaks every two

15   hours during an eight-hour working day; elevation of her left leg for a "couple of

16   inches" during 50 percent of an eight-hour working day; and standing or walking

17   with a cane.  *Id.* at 523.  Dr. Mooney found that plaintiff can: walk for five city

18   blocks without rest or severe pain; lift/carry items weighing less than 10 pounds

19   frequently and those weighing 10 pounds occasionally; and twist occasionally;

20   stoop (bend), crouch, and climb stairs, though rarely.  *Id.* at 495.  Dr. Mooney went

21   on to indicate that plaintiff's disability was "moderate," but not "severe" or

22   "crippled."  *Id.* at 536, 540, 546.  These findings tend to lend support to the ALJ's

23   determination that plaintiff is capable of performing sedentary work with the stated

24   limitations.  *See Turner*, 613 F.3d at 1223.

25         As for plaintiff's contention that it was improper for the ALJ not to discuss

26   non-exertional physical limitations, "such as postural limitations" (Pl.'s Mem. at

27   12), the court agrees with defendant's contention that the ALJ was not required to

28   engage in a function-by-function analysis after properly evaluating plaintiff's

27

physical and mental limitations and subjective complaints.  Def.'s Mem. at 9; *see*

*Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (the ALJ's proper

assessment of plaintiff's limitations and complaints rendered "unnecessary" "a

function-by-function analysis for medical conditions or impairments the ALJ found

neither credible nor supported by the record").  As such, it was proper for the ALJ

not to discuss plaintiff's non-exertional physical limitations.

Accordingly, the ALJ provided a complete and proper assessment of

plaintiff's RFC and properly determined the RFC to be "sedentary" work with the

additional stated limitations.

**V.**

**CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING

the decision of the Commissioner denying benefits and dismissing this action with

prejudice.

Dated: January 9, 2013

_____

SHERI PYM
UNITED STATES MAGISTRATE JUDGE

28